**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| J. JONDHI HARRELL, | : | |
| | | Civil Action No. 09-2532 (RBK) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| WARDEN PAUL SCHULTZ, | : | |
| | | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner pro se
J. Jondhi Harrell
Federal Correctional Institution at Fairton
P.O. Box 420
Fairton, NJ 08320

**KUGLER**, District Judge

Petitioner J. Jondhi Harrell, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Paul Schultz.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I. BACKGROUND

Petitioner states that he has been confined for approximately 18 years. His scheduled release date is March 25, 2010.

In October 2008, he was advised by his Unit team that he would be placed in a pre-release "halfway house"[2] placement for a period of six months prior to his scheduled release. The scheduled date for Petitioner's transfer to a "halfway house" is September 29, 2009.

Petitioner requested additional time in pre-release custoday at the halfway house; specifically, he requested transfer on June 29, 2009, pursuant to the Second Chance Act of 2007, 18 U.S.C. § 3624(c)(1), which became effective April 9, 2008.[3] Petitioner

---

[2] The Bureau of Prisons uses the term "Residential Re-entry Center" or "RRC."

[3] The Second Chance Act provides, in pertinent part:

(1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

...

alleges that he was told that the Regional Office was approving only six-months of pre-release placement in halfway houses, allegedly contrary to the statutory maximum of twelve months.[4]

---

    (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

    ...

    (6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--

        (A) conducted in a manner consistent with section 3621(b) of this title;

        (B) determined on an individual basis; and

        (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

[4] Petitioner refers to an internal BOP memorandum, dated April 14, 2008, which allegedly states that, "while the act makes inmates eligible for a maximum of 12 months pre-release placement, Bureau experience reflects that inmates pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine an inmates pre-release placement may require greater than six months, the Warden must obtain the Regional Directors written concurrence before submitting the placement to the Community Corrections Manager."

    Petitioner also refers to a subsequent BOP interim rule which does not contain the "directive" limiting prisoners to six-months pre-release placement in a halfway house.  See 73 F.R. 62440-01, 2008 WL 4619649 (October 21, 2008).  Petitioner does not state whether his RRC placement decision was made before or after the issuance of the interim rule.

He initiated a grievance pursuant to the Bureau of Prisons administrative grievance procedure.[5]  Nowhere in the administrative appeals does Petitioner assert that his pre-release placement decision was made pursuant to an unlawful Bureau of Prisons policy.  Petitioner has unsuccessfully appealed the denial of his grievance to the Warden.  His appeal is now pending in the Regional Office, which recently advised Petitioner that it would take an additional 30 days to consider the appeal.

Petitioner asks this Court to address his challenge to the pre-release transfer decision without awaiting exhaustion of his administrative remedies.  He contends that exhaustion should be excused as "futile" because his administrative appeals are not likely to be concluded by June 29, 2009.  In addition, Petitioner

---

[5] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

contends that if the Bureau of Prisons were correctly implementing the provisions of the Second Chance Act, he would have been released March 25, 2009, to six months RRC placement followed by six months home confinement.  Thus, Petitioner alleges that he has already suffered "potentially irreparable injury" as a result of the BOP's actions.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  See

Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

### III.  ANALYSIS

Petitioner admits that he has not exhausted his administrative remedies, but that exhaustion should be excused as futile because (1) exhaustion can not be completed in a timely manner and (2) the Bureau of Prisons' failure to adhere to the requirements of the Second Chance Act has already caused him "potential irreparable harm."

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau

6

of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

    As an initial matter, the Court notes that Petitioner did not assert, in his administrative appeals, the claim he asserts here, that the decision was made pursuant to an internal policy, as set forth in the April 2008 memo, that contravened the statutory standard.  To the contrary, in his administrative appeals, Petitioner challenged the decision on the grounds that his circumstances simply required a longer pre-release RRC placement.

    Petitioner has not alleged any facts that would permit this Court to find that exhaustion of Petitioner's administrative remedies would have been futile or that requiring exhaustion would subject Petitioner to "irreparable injury."  It would not

be appropriate to deem exhaustion "futile" at this time in the face of Petitioner's willful failure to make any attempt to exhaust the claim asserted here since being advised of his pre-release placement date in October 2008, a period of approximately seven months.  Without a full administrative record regarding the claim asserted here, this Court cannot determine whether the decision was made pursuant to the challenged policy allegedly set forth in the referenced April 2008 memorandum.

Finally, contrary to Petitioner's argument, nothing in the Second Chance Act entitles Petitioner to a six-month RRC placement followed by a six-month term of home confinement.  Those pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations.

## IV. CONCLUSION

For the reasons set forth above, the Petitioner will be dismissed without prejudice for failure to exhaust administrative remedies.  An appropriate Order follows.


s/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: June 2, 2009